# 23-35060

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

United Federation of Churches, LLC (dba "The Satanic Temple"),
*Plaintiff-Appellant,*

*v.*

David Alan Johnson, Leah Fishbaugh, Mickey Meehan, and
Nathan Sullivan,
*Defendants-Appellees.*

On appeal from the United States District Court
for the Western District of Washington,
No. 2:20-cv-00509
Hon. Richard A. Jones, Senior U.S. District Judge, presiding

## OPENING BRIEF FOR TST



**Matt Kezhaya**                          matt@crown.law
Ark. # 2014161                    direct: (479) 431-6112
Minn. # 0402193                   general: (612) 276-2216

121 Washington Ave. N., 4th Floor, Minneapolis, MN 55401

# SUMMARY OF THE CASE

In 2020, four volunteer social media managers were terminated for mismanaging two of TST's Facebook pages. They "stole" the pages and directed false and harmful claims at TST's hard-won audience for the greater purpose of creating a competitor organization using the stolen property as an initial capital contribution.

TST first sued for, among others, cyberpiracy and defamation. Both were dismissed for failure to state a claim. The cyberpiracy claim was dismissed because the URL to the misappropriated trademark was on the wrong side of ".com". No part of the statute limits cyberpiracy in this way. The defamation claim was dismissed because the statements were about a religious organization. There is no "religious organization" exclusion to defamation liability.

The cyberpiracy issue is one of first impression, and the defamation issue is a matter of First Amendment significance. The Court should entertain oral argument, at 15 minutes per side.

# TABLE OF CONTENTS

Summary of the case ................................................................. 2

Table of contents ....................................................................... 3

Table of authorities ................................................................... 4

Jurisdictional statement ............................................................ 7

Statement of the issues ............................................................. 9

    1: There is no "Facebook" exclusion to cyberpiracy. .............. 9

    2: Ecclesiastical abstention did not bar the defamation claim. ... 9

Statement of the case .............................................................. 10

Summary of the argument ....................................................... 15

Argument .................................................................................. 16

    Standard of review ............................................................. 16

    1: There is no "Facebook" exclusion to cyberpiracy liability. . 16

        1.1: The statute is concerned with falsified designations of origin. .......................................................................... 17

        1.2: Facebook is an "other domain registration authority." 22

    2: Ecclesiastical abstention did not bar the defamation count. 24

        2.1: There is no "religious organization" exclusion to defamation. ................................................................... 25

        2.2: TST should have been treated as any secular organization. ............................................................... 29

Conclusion / prayer for relief .................................................. 30

Certificate of service ............................................................... 31

Certificate of compliance ........................................................ 31

# TABLE OF AUTHORITIES

## Cases

*Amazon, Inc. v. Dirt Camp, Inc.*,
  273 F.3d 1271 (10th Cir. 2001)..................................................8

*Arizona v. Tohono O'odham Nation*,
  818 F.3d 549 (9th Cir. 2016) .................................................. 18

*Auto. Alignment & Body Service, Inc. v.*
  *State Farm Mut. Auto. Insurance Company*,
  953 F.3d 707 (11th Cir. 2020)...................................................8

*Chickasaw Nation v. United States*,
  534 U.S. 84 (2001)................................................................ 18

*Church of Scientology of California v. Siegelman*,
  475 F. Supp. 950 (S.D.N.Y. 1979)......................................... 28

*Griffin v. Oceanic Contractors, Inc.*,
  458 U.S. 564 (1982) .............................................................. 21

*H-D U.S.A., LLC v. SunFrog, LLC*,
  2017 WL 3261709 (E.D. Wis. July 31, 2017) ........................ 20

*Hyung Jin Moon v. Hak Ja Han Moon*,
  431 F. Supp. 3d 394 (S.D.N.Y. 2019) .................................... 26

*Interactive Prod. Corp. v. a2z Mobile Off. Sols., Inc.*,
  326 F.3d 687 (6th Cir. 2003) ................................................. 20

*Kavanagh v. Zwilling*,
  997 F. Supp. 2d 241 (S.D.N.Y. 2014) .................................... 27

*Our Lady of Guadalupe School v. Morrissey-Berru*,
  140 S.Ct. 2049 (2020) ........................................................... 26

*Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*,
  819 F.2d 875 (9th Cir. 1987) ................................................ 25

*Pit River Tribe v. Bureau of Land Mgmt.*,
  939 F.3d 962 (9th Cir. 2019) ............................................18, 20

*Puri v. Khalsa*,
  844 F.3d 1152 (9th Cir. 2017)..................................... 16, 25, 29

*Satanic Temple, Inc. v. Newsweek Magazine LLC*,
  2023 WL 2403136 (S.D.N.Y. 2023) ...................................... 28

*Serbian E. Orthodox Diocese v. Milivojevich*,
  426 U.S. 696 (1976) ............................................................... 24

*Shurtleff v. City of Bos., Massachusetts*,
  142 S. Ct. 1583 (2022) .......................................................... 27

*Thompson v. Potashnick Const. Co.*,
  812 F.2d 574 (9th Cir. 1987) ................................................... 8

*Wilens v. Doe Defendant No. 1*,
  2015 WL 5542529 (N.D. Cal. Sept. 18, 2015) ....................... 21

## Statutes

15 USC § 1125 ....................................................................17, 19

15 USC § 1127 ............................................................ 17, 22, 24

15 USC § 8131 ....................................................................... 19

28 USC § 1291 .................................................................. 8

**Rules**

FRAP 3 ....................................................................... 8

FRAP 4 ....................................................................... 8

**Treatises**

*Law of Defamation* § 6:74 (2d ed.) .............................................. 29

*Restatement (Second) of Torts* § 561 ............................................ 28

# Jurisdictional statement

This is an appeal from piecemeal dismissal orders for failures to state a claim, ending with dismissal of the surviving state-law claims for a lack of sufficient amount in controversy.

The original complaint asserted federal questions and state-law claims. On Defendants' first Rule 12(b)(6) motion, the District Court dismissed all claims, with leave to amend. Plaintiff moved for reconsideration of the cyberpiracy and defamation counts. The District Court declined to reconsider the dismissal.

Plaintiff amended the complaint to specifically address matters not previously presented to the Court. Defendants again moved for Rule 12(b)(6) dismissal. The District Court dismissed the hacking claim, but the state-law claims survived.

Defendants then moved for a Rule 12(b)(1) dismissal, asserting insufficiency of the amount in controversy. Plaintiff responded that the surviving counts arguably supported damages of $435,000+. The District Court dismissed the remaining counts for want of

diversity jurisdiction. This order had appellate finality because it dismissed the entire action, notwithstanding that the dismissal was without prejudice. *Thompson v. Potashnick Const. Co.*, 812 F.2d 574, 576 (9th Cir. 1987); *see also Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001).

Thirteen days after the final order, Plaintiff noticed an appeal. ER-173. This was timely. FRAP 4 (30-day deadline). The notice designates the final order "as well as all orders subsumed into it", *i.e.*, the preceding dismissals and the order denying reconsideration. ER-5, 10, 43, 111; FRAP 3(c)(1)(B); *Auto. Alignment & Body Service, Inc. v. State Farm Mut. Auto. Insurance Company*, 953 F.3d 707, 724–25 (11th Cir. 2020) (interlocutory orders are merged into the final judgment).

The Court has appellate jurisdiction under 28 USC § 1291 because the notice of appeal was timely filed, designates a final order, and further designates the merged orders at issue below.

# STATEMENT OF THE ISSUES

## 1: There is no "Facebook" exclusion to cyberpiracy.

*Pit River Tribe v. Bureau of Land Mgmt.*,
939 F.3d 962 (9th Cir. 2019)

*H-D U.S.A., LLC v. SunFrog, LLC*,
2017 WL 3261709 (E.D. Wis. July 31, 2017)

## 2: Ecclesiastical abstention did not bar the defamation claim.

*Puri v. Khalsa*,
844 F.3d 1152 (9th Cir. 2017)

*Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*,
819 F.2d 875 (9th Cir. 1987)

# STATEMENT OF THE CASE

This is an appeal from two partial Rule 12(b)(6) dismissal orders which ended with a final dismissal for an insufficient amount in controversy. In 2020, Defendants "stole" Plaintiff's website and used it to direct allegedly-defamatory statements to Plaintiff's audience.

Plaintiff-Appellant is the owner of the registered trademark "The Satanic Temple" ("**TST**") in the context of religious organizations. ER-74. TST is a nontheistic religious organization comprised of more than 700,000 members in every State and internationally. At the relevant time, TST's membership was organized into local chapters under the control of a national organization. ER-132, ¶13.

In January 2015, the Washington Chapter created the "Chapter" Facebook page to organize and marketing Chapter activities. ER-54, ¶31. In 2018, the Washington Chapter created the "Allies" Facebook page to communicate with prospective members. ER-54, ¶32.

Defendants were entrusted with operating the websites. ER-56, ¶36. In early March 2020, though, they began confusing TST's religious mission with their own political mission. ER-57, ¶39. From March 2-12, 2020, they repeatedly operated TST's social media to endorse leftist politics rather than Satanism (despite policies and warnings to the contrary), failed to attend a meeting to address the matter, and failed to participate in organizational activities. Id. On March 12, 2020, the Washington leadership removed Defendants from their positions of trust. ER-58, ¶43.

By March 14, 2020, TST's Washington leadership had not yet removed Meehan's administrative access to the Allies page. ER-59, ¶46. Meehan removed all TST-approved administrators, except the other Defendants, changed the name of the Allies page to "Evergreen Memes for Queer Satanic Fiends." Id.

Following Meehan's hacking of the Allies page, TST's Washington leadership removed the Defendants' administrative access from all remaining TST social media. ER-59, ¶49. On March 18, Johnson

hacked the Chapter page. ER-60, ¶51. Same as Meehan, he removed all TST-approved administrators, appended the phrase "Archived Temple Chapter" and posted a three-page manifesto. ER-60, ¶51. That evening, TST's Washington leadership issued a cease and desist demand for a return of the Facebook page. ER-60, ¶53. Johnson ignored it and spent the next couple of days posting links and commentary accusing TST of being incompetent fascists who endorse ableism and police brutality. ER-60, ¶54-5.

The thieves similarly attempted to hack the Twitter and Google accounts for TST's Washington Chapter but were thwarted. ER-61, ¶56. Sullivan publicly stated they "stole" the Allies page:

 **Nathan Von Sullivan** we have a meme page here that we stole from TST:
Evergreen Memes for Queer Satanic Fiends

and a small group of regional satanists that we're using as a sort of safe space and social club. I imagine i'll be setting up another Discord for us too

Like · Reply · 8w                    4

ER-86.

Despite demand, the thieves refused to return TST's property. ER-62, ¶64-5.

Litigation began with an original complaint on April 3, 2020. ER-130. The original complaint asserted federal statutory liability for cyberpiracy and defamation. ER-140-45. On Defendants' Rule 12(b)(6) motion, the District Court dismissed all claims, with leave to amend. ER-5. Plaintiff moved for reconsideration of the cyberpiracy and defamation counts. The District Court declined to reconsider the dismissal. ER-43.

An amended complaint asserted hacking, tortious interference, trespass to chattels and conversion. ER-49. The thieves again moved for Rule 12(b)(6) dismissal. The District Court dismissed the federal hacking claim, but retained the state-law claims for tortious interference, trespass to chattels, and conversion. ER-10.

The thieves then moved for a Rule 12(b)(1) dismissal, asserting insufficiency of the amount in controversy. TST responded that the surviving counts supported damages of $435,000+. The District

Court dismissed the remaining counts, without prejudice, for want of diversity jurisdiction. ER-5. This appeal timely follows.

# Summary of the argument

The cyberpiracy claim should have survived dismissal. The statute extends the Lanham Act's purposes into the internet age. The Lanham Act is designed to prevent consumer confusion and to protect goodwill engendered in registered trademarks. The Facebook page at issue created consumer confusion and was used to dilute TST's trademark. The narrow definition of "domain name" by the court usurps the act's purposes.

The defamation claim should have survived dismissal. The District Court dismissed it because the allegedly-defamatory statements were about a religion's tenets, practices, and affiliations. Contrary to the District Court's order, the ecclesiastical abstention doctrine does not permit a jury to determine "falsity" of a religion's tenets; the church is entitled to a controlling determination of its own ideology. Whether the Defendants' misattribution of practices and affiliations were actionable as mixed opinions should have been the analysis, but this was never touched on below.

# ARGUMENT

## Standard of review

At issue are two dismissal orders. This Court reviews de novo a district court's dismissal for failure to state a claim upon which relief can be granted. *Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir. 2017). Questions of law, including constitutional rulings and determinations on mixed questions of law and fact that implicate constitutional rights, are also reviewed de novo. *Id.*

## 1: There is no "Facebook" exclusion to cyberpiracy liability.

Since the original complaint, TST has asserted entitlement to relief under the Anticybersquatting Consumer Protection Act of 1999. ER-131. With a wrongful purpose to profit off TST's name, the thieves trafficked in a website which included as part of the URL: "TheSatanicTempleWashington." ER-62, ¶61. Consumer confusion resulted and TST's brand was diluted. But the District Court dismissed this claim because the URL for the pirated material was

"post-domain," (after '.com') rather than a "secondary domain" (before '.com'). ER-46. This ignored both the statutory purpose and text, each of which is concerned with falsified designations of origin. The Court should reverse and remand for trial proceedings.

*1.1: The statute is concerned with falsified designations of origin.*

The Act creates liability for individuals who use a "domain name" that is identical or confusingly similar to a registered trademark. 15 USC § 1125. The term "domain name," means "any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet." 15 USC § 1127. The District Court should have found that the unique alphanumeric electronic address for a Facebook page is a necessary "part of an electronic address on the Internet."

This is an issue of first impression which turns on statutory interpretation. The cardinal rule of statutory construction is to determine the intent of Congress. *Chickasaw Nation v. United States*, 534 U.S.

84, 94 (2001); *Pit River Tribe v. Bureau of Land Mgmt.*, 939 F.3d 962, 970 (9th Cir. 2019). When the text is unambiguous, statutory interpretation involves application of the statutory language. *Ibid.* Under this framework, courts should not inject words into the statute because the statute's plain language is the primary guide to Congressional intent. *Pit River*, 939 F.3d at 971.

A statute is "ambiguous" when it can be reasonably interpreted in more than one way. *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 556 (9th Cir. 2016). This ambiguity can arise from the language itself, the specific context in which the language is used, or the broader context of the statute as a whole. *Pit River*, 939 F.3d at 970.

The statutory text is unambiguous. It refers to the "alphanumeric designation" which constitutes an "electronic address," even if only "in part." The electronic address is facebook.com/**TheSatanicTemple**Washington. The bolded part of the electronic address is duplicative of TST's trademark.

Further support is found in the specific context in which the term

"domain name" is used. The greater context of the statute is to preclude Internet-based platforms from being exploited in bad faith to tarnish a well-known mark and deceive the general public. 15 USC § 1125(d) and 15 USC § 8131. The term "domain name" is employed in relation to the prevention of cyberpiracy, where the prohibited bad faith is determined through a nine-factor test. 15 USC § 1125 (d)(1)(B). In three of the nine factors, Congress equated a "domain name" with a "site." Id., factors (IV) – (VI).

Legislative history also supports the proposition that Facebook pages can be the subject of cyberpiracy. See Senate Report 106-140. Congress considered a "domain name" to be: (1) synonymous with a website; (2) located at an alphanumeric electronic address; (3) provided by a registration authority; and (4) a potential instrument of harm to goodwill or consumer confusion (not a screenname). Report at pp. 6-10. A Facebook page meets every one of these categories.

The District Court came to a contrary conclusion by injecting

words into the statute. This is forbidden. *Pit River*, 939 F.3d at 971.
No part of the statutory definition for "domain name" specifies pre-
or post- ".com," or excludes Vanity URLs. In support of its contrary
conclusion, the District Court cited *Interactive Prod. Corp. v. a2z Mo-
bile Off. Sols., Inc.*, 326 F.3d 687, 696-98 (6th Cir. 2003). But the same
case provides that the principal purpose for trademark law is to "pre-
vent[] others from copying a source-identifying mark." *Id.*, at 696
(quoting *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 163–
64 (1995)).

Based on the statutory text and the legislative history, this statute
extends the broader context of the Lanham Act into the digital era.
*See H-D U.S.A., LLC v. SunFrog, LLC*, No. 17-CV-711-JPS, 2017 WL
3261709, at *5 (E.D. Wis. July 31, 2017) (finding post-domain ad-
dress confusing enough to grant preliminary injunction). Both sec-
ond-level domains and Facebook pages fall within this intersection
of the Lanham Act's goals and the internet. This further suggests
that the alphanumeric designation for a Facebook page should be
considered a "domain name."

The District Court's interpretation also flouts the canon against absurd results. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 586 n. 11 (1982). There is no principled distinction between a Word-Press website and a Facebook website. Both are social media platforms which provide a unique alphanumeric electronic address to designate the origin of website content. But under the District Court's analysis, only a WordPress website may be grounds for cyberpiracy liability because that company happens to place the unique alphanumeric designations before the '.com.' See *Wilens v. Doe Defendant No. 1*, 2015 WL 5542529, at *3 (N.D. Cal. Sept. 18, 2015) ("*jeffrewilens2*.wordpress.com" was actionable).

A Facebook page designates origin, is navigated to by entering an alphanumeric string which constitutes an electronic address, is synonymous with a website, and is a potential instrument to create consumer confusion and to inflict harm on the goodwill of a registered trademark owner. The District Court erred by injecting words into the statute and by disregarding the broader context of the statute's purpose. The Court should reverse and remand for trial

proceedings.

*1.2: Facebook is an "other domain registration authority."*

A "domain name" must also be registered with or assigned by an "other domain registration authority." 15 USC § 1127. Facebook is an "other domain registration authority" because it is identically situated to any traditional domain registrar.

Like all other domain name registrars, Facebook offers a unique electronic address, *e.g.*, facebook.com/YourPageName. These unique addresses are analogous to traditional domain names because they provide an easily identifiable way for users to access specific content on the Facebook platform.

Just like traditional domain names, Facebook Vanity URLs consist of alphanumeric designations. These designations serve as the "electronic address" to access specific Facebook pages, similar to how domain names serve as electronic addresses for websites.

Just like any other registrar, Facebook users must register with and create an account to obtain their unique electronic address. This

registration process is similar to the registration process for domain names through traditional domain name registrars.

As with other registrars, Facebook has authority over user accounts and their associated electronic addresses. It can enforce its Terms of Service and Community Standards, each of which grant Facebook the right to suspend or terminate accounts and remove content that violates its policies. This authority is identical to the control that domain name registrars have over domain names registered with them.

As with other websites, Facebook's Internet-based platform enables third parties to interact with its network through specially-designed software applications, such as the Facebook API. This interaction is analogous to the way third parties can interact with domain names and the web infrastructure.

Considering these factors, Facebook behaves precisely as a domain name registration authority in the context of its user accounts and the unique electronic addresses associated with them. While the

District Court correctly found that Facebook is not a traditional domain name registrar or registry, the statutory text provides for "*other* domain name registration authorities." 15 USC § 1127. The District Court erred by ignoring this portion of the statutory text. The Court should reverse and remand for trial proceedings.

## 2: Ecclesiastical abstention did not bar the defamation count.

The original complaint asserted defamation liability for Defendants' provably false statements about TST's tenets, organizational activities, and affiliations. The District Court dismissed the defamation count because the statements were about a religion's tenets, practices, and affiliations. ER-128-9. In effect, religious plaintiffs are barred from recovery for defamation.

At issue is the ecclesiastical abstention doctrine, under which courts cannot hear religious disputes "that incidentally affect civil rights." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710 (1976). However, abstention is not proper where the dispute can be addressed without delving into doctrinal matters. *Puri v. Khalsa*, 844

F.3d at 1162. There are two main approaches to avoid court determination of church doctrine. *Id.* If the dispute requires extensive inquiry into religious law or church governance, the court "must accept as a given whatever the entity decides." *Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*, 819 F.2d 875, 878 (9th Cir. 1987). Or, if the dispute can be resolved by neutral principles of secular law, then the court should apply the standard rules. *Puri*, 844 F.3d at 1163.

*2.1: There is no "religious organization" exclusion to defamation.*

The District Court held that the defamation claim necessarily requires "the Court or the jury to define the beliefs held by [TST]," but errantly refused to accept TST's statement of doctrine as controlling. ER-48. The deference rule requires the opposite approach. *Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*, 819 F.2d at 878 (the deference rule requires courts to "accept as a given whatever the entity decides.") Under the Free Exercise Clause, church doctrine is to be resolved by the church, not by the government

(courts included). *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S.Ct. 2049, 2055 (2020).

In holding that the ecclesiastical abstention doctrine prohibits courts from passing on the truth or falsity of a church's stated doctrine, the District Court relied on two out-of-context quotes from the Southern District of New York. ER-128.

First, the District Court relied on *Hyung Jin Moon v. Hak Ja Han Moon*, 431 F. Supp. 3d 394, 413 (S.D.N.Y. 2019). In *Moon*, the dispute was over who was the rightful successor to the recently-deceased leader of a church. But the deference approach was unavailable in *Moon* because "the deference approach presupposes that the identity of the church's authoritative decision-making body is undisputed." *Id.*, at 407. *Moon* does not fit because TST's leadership is uncontested. While true that the District Court "could not pass on the truth or falsity" of the doctrinal assertions (*id.*, at 413), that is because TST's uncontested leadership has a right to define its doctrine.

Second, the District Court relied on *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 250 (S.D.N.Y. 2014). In *Kavanagh*, the First Amendment barred a defamation claim against a church which had defrocked the plaintiff following an ecclesiastical trial for the sin of sexual abuse of a minor. Again, the deference rule required courts to apply the church polity rules as stated by the church.

In response, the District Court asserted that the deference rule applies only when the church is the defendant, suggesting that a church-plaintiff's doctrine may be freely redefined by the courts. ER-48. This categorically excludes religious plaintiffs from recovery for defamation, solely because of religion. The neutrality requirements of the First Amendment demand otherwise. *Shurtleff v. City of Bos., Massachusetts*, 142 S. Ct. 1583, 1594 (2022) (Kavanaugh, J., concurring) ("a government *violates* the Constitution when (as here) it *excludes* religious persons, organizations, or speech because of religion from public programs, benefits, facilities, and the like").

There is no "religious organization" exemption to defamation

liability. *Restatement (Second) of Torts* § 561, cmt. *b* (1977) (recognizing that religious corporations have a defamation claim for communications that "tend to disparage such a corporation in the conduct of its activities and thus to obstruct the accomplishment of its corporate purposes, by preventing it from obtaining donations"); *Satanic Temple, Inc. v. Newsweek Magazine LLC*, 2023 WL 2403136, at *5 (S.D.N.Y. 2023) (rejecting the District Court's approach because it "would effectively render all religions (and many non-profits) *per se* public figures"); *Church of Scientology of California v. Siegelman*, 475 F. Supp. 950, 953 (S.D.N.Y. 1979) ("It does not follow that simply because a religious organization is a party to an action that that action should be immediately categorized as a theological dispute") (cleaned up).

When a defamation claim turns on application of church doctrine, courts and juries are bound to apply the definition given by the church and may *not* consider a competing definition. The dismissal order did the opposite by refusing to apply the plaintiff's statement of its own doctrine. The appropriate remedy is to vacate

and remand the order of dismissal. *Puri*, 844 F.3d at 1168.

*2.2: TST should have been treated as any secular organization.*

Further, the dismissal order reversibly failed to apply neutral principles of law to this dispute. At issue is Defendants' actionable mixed opinions about TST's doctrine, practices, and affiliations. The District Court should have applied the mixed opinion framework set forth by secular law. Restatement (Second) of Torts § 566 (1977); see also *Law of Defamation* § 6:74 (2d ed.) (proffering that the Free Speech Clause protections for defamation defendants are "precisely the correct level of constitutional protection" because "statements that range into religious opinion" are subsumed by the preexisting opinion framework). Because this is a fact-intensive analysis which was not undertaken below, the appropriate relief is to vacate the order of dismissal and remand for trial proceedings.

# Conclusion / prayer for relief

**Wherefore** the Court should:

(1) Reverse and remand the dismissal of the cyberpiracy claim; and

(2) Vacate and remand the dismissal of the defamation claim.



| | |
|---|---|
| **Matt Kezhaya** | **matt@crown.law** |
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0402193 | general: (612) 349-2216 |

121 Washington Ave. N., 4th Floor, Minneapolis, MN 55401

# CERTIFICATE OF SERVICE

NOTICE IS GIVEN that I, Matt Kezhaya, efiled this document by up-
loading it to the CM/ECF system on April 26, 2023 which sends
service to registered users, including all other counsel of record in
this cause. Paper service to follow upon the Clerk's instruction.
*s/Matt Kezhaya*

# CERTIFICATE OF COMPLIANCE

This document complies with the page limitation of Ninth Cir.
R.32-1 (principal briefs: 14,000 word limit; reply brief: 7,000 word
limit) because, excluding the parts of the document exempted by
FRAP 32(f), this document contains **3,538** words.

This document complies with the typeface requirements of FRAP
32(a)(5) and the type-style requirements of FRAP 32(a)(6) because
this document has been prepared in a proportionally spaced type-
face using MS Office 365 in 14pt "Calisto MT" font. Headers are in
15pt "Calisto MT" font.

The electronic version of the brief and addendum have been
scanned for viruses and are virus-free.

*s/Matt Kezhaya*